UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

WILLIAM PENA HERNANDEZ,

      Plaintiff,

v.                                        Case No: 8:17-cv-2951-T-36JSS

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

_____/

## **ORDER**

This matter comes before the Court upon the Plaintiff's Objections to the United States

Magistrate Judge's Report and Recommendation (Doc. 21) (the "Objection"). Defendant has not

responded to the Objection and the time to do so has elapsed. In the Report and Recommendation,

the Magistrate Judge recommends that the Court affirm the Commissioner of Social Security's

decision that the Plaintiff is not disabled because (1) the record contains substantial evidence

supporting the Administrative Law Judge's ("ALJ") assignment of weight to physicians' and State

agency medical consultants' opinions, (2) because the ALJ found that Plaintiff suffers from a

severe impairment, any error in failing to find that Plaintiff suffers from an additional severe

impairment would be harmless, (3) the ALJ considered all of Plaintiff's impairments in

combination, and (4) the ALJ's finding that Plaintiff has a residual functional capacity ("RFC") to

perform a full range of medium work is supported by substantial evidence. Doc. 20.

In the Objection, Plaintiff contends that the ALJ (1) erroneously failed to consider

Plaintiff's mental impairments in establishing his RFC, and that the error was not harmless; (2)

substituted his medical judgment for that of treating, examining, and non-examining medical

sources; and (3) improperly gave little weight to the opinions of certain doctors. Doc. 21. After

an independent *de novo* review of the record, including Plaintiff's Objection, the Report and Recommendation will be adopted, confirmed, and approved in all respects, and the decision of the Commissioner will be affirmed.

## I.    BACKGROUND

### A.    Procedural Background

Plaintiff William Pena Hernandez submitted an Application for Disability Insurance Benefits ("DIB") on June 17, 2014, to the Social Security Administration ("SSA"). R:265-74. Plaintiff indicated that he became disabled on November 22, 2013. *Id.* at 265.

The SSA denied Plaintiff's application for DIB on September 26, 2014. *Id.* at 156-58. The SSA explained that Plaintiff could be on his feet most of the day, lift 10 pounds frequently, lift 20 pounds occasionally, was able to think, communicate, act in his own interest and care for his own needs. *Id.* at 159. The SSA also determined that Plaintiff could get along with others, perform his usual daily activities, and remember and follow basic instructions. *Id.* The SSA concluded that Plaintiff could perform simple jobs without complex instructions, and ones that did not involve working closely with others. *Id.* Plaintiff requested reconsideration of the SSA's decision on November 3, 2014, and his application was again denied. *Id.* at 168-70.

Plaintiff requested a hearing by an ALJ on January 30, 2015. *Id.* at 183. A hearing was scheduled for August 23, 2016. *Id.* at 210. The ALJ issued an unfavorable decision on January 11, 2017, finding that Plaintiff has not been under a disability within the meaning of the Social Security Act from November 22, 2013, through the date of the decision. *Id.* at 30-50. Plaintiff requested review of the denial from the Appeals Council, which the Appeals Council denied. *Id.* at 1-4.

Plaintiff filed a complaint for review in this Court. Doc. 1. The Magistrate Judge considered memoranda provided by the parties in opposition to and support of the Commissioner's decision and issued a Report and Recommendation recommending that the Commissioner's decision be affirmed. Docs. 18-20. Plaintiff Objected to the Magistrate Judge's Report and Recommendation. Doc. 21.

## B. Factual Background and the ALJ's Decision

Plaintiff received an associate's degree from a technical college. *Id.* at 64-65. From 1990 until November 22, 2013, Plaintiff worked as a combination welder. *Id.* at 298. He alleged a disability on that date due to disc, neck, knee, and hand pain, depression, sciatic nerve problems, and high blood pressure. *Id.* at 297.

During the hearing regarding Plaintiff's application for DIB, Plaintiff and a vocational expert ("VE") testified. The ALJ posed hypotheticals to the VE based off of a 44-year-old Spanish speaking individual with the same work experience as Plaintiff, who can lift no more than 50 pounds occasionally, lift and carry 25 pounds frequently, and stand or walk or sit each for about six hours with normal breaks. *Id.* at 77. The VE indicated that such an individual could perform Plaintiff's past work. *Id.*

The ALJ then changed the hypothetical, asking whether such a person could perform Plaintiff's past work if that person could lift no more than 20 pounds occasionally; lift and carry 10 pounds frequently; should avoid climbing ropes and scaffolds but could occasionally climb ladders and stairs, frequently climb ramps, frequently balance; could occasionally stoop, kneel, crouch, and should avoid crawling; should avoid concentrated exposure to extreme cold, excessive vibration, extreme heat or humidity, concentrated exposure to industrial hazards (defined as the use of hazardous or moving industrial machinery and unprotected heights); but who retains the

ability to understand, remember, and carry out simple tasks and instructions.  *Id.* at 77-78.  The VE testified that such a person could not perform Plaintiff's past work, but could work as a housekeeper, a sorter of agricultural produce, and a hand marker, for which jobs exist nationally.  *Id.* at 77-78.

The ALJ next posed a hypothetical adding the limitation that the person's reaching, handling, and fingering is limited to no more than frequent.  *Id.* at 78.  The VE stated that such a person could still work as a housekeeper and hand marker.  *Id.*

Plaintiff's counsel asked the VE whether a person with such limitations who would also be required to miss work three or more days per month would be able to sustain employment and perform such jobs, which the VE answered in the negative.  *Id.* at 79.  The VE further explained that the tolerance level on absenteeism would be no greater than once per month.

The attorney also posed a hypothetical based on a person able to do light work, lift up to 20 pounds occasionally, lift and carry 10 pounds frequently, who could never crawl or climb ropes or scaffolds.  *Id.* at 80.  The person could also occasionally climb stairs and ladders, stoop, kneel, and crawl, and would need to avoid concentrated exposure to extreme heat and cold, humidity, vibration, and hazards such as machinery and unprotected heights.  *Id.*  This hypothetical person could also understand, remember, and carry out only short, simple instructions, could make simple decisions, should have no contact with supervisors, should have only occasional contact with the public and coworkers, and could not respond appropriately to usual work situations or changes in a routine work setting.  *Id.*  The attorney asked whether any work existed that such an individual could perform, and the VE responded that there was not.  *Id.*

After the hearing, the ALJ issued a Decision denying Plaintiff's application for DIB.  *Id.* at 30-50.  Regarding impairments, the ALJ found that Plaintiff had the severe impairment of

cervical stenosis.  *Id.* at 32.  The ALJ also found that Plaintiff was diagnosed with various impairments that the ALJ found did not cause more than minimal or transient symptoms or limitations, including hyperlipidemia/dyslipidemia, a Vitamin D deficiency, hyperglycemia, erectile dysfunction, flank pain caused by kidney stones, hypertension, headaches, and to the extent that it applied,[1] obesity.  *Id.* at 33-36.  Accordingly, the ALJ found these impairments to be non-severe.  *Id.*

The ALJ also addressed testimony by Plaintiff during the hearing that he suffered lower back pain that radiated to his lower extremities.  The ALJ noted that Plaintiff's medical records reflected that Plaintiff complained of low back pain with radicular pain and numbness radiating to his lower extremities during a visit with his primary care provider on June 20, 2013, and complained again of back pain to his psychotherapist in 2014.  *Id.* at 34.  Plaintiff was treated for back pain after his primary care visit, but the ALJ did not find evidence of other complaints of or treatment for lower back pain in the record for those years.  *Id.*  Plaintiff did complain of low back pain during a visit with a chiropractor in 2015, and to a new primary care physician, Dr. Jose Cruz, in March 2016.  *Id.*  Cruz noted a decreased range of motion in Plaintiff's thoracic and lumbar spine, but the ALJ did not find evidence of an underlying medically determinable back impairment that could reasonably be expected to cause Plaintiff's low back pain and radicular low extremity symptoms in the record.  *Id.*  Accordingly, the ALJ rejected Plaintiff's testimony regarding his

---

[1] The ALJ found that Plaintiff was not obese although Plaintiff exceeded the clinical threshold for obesity.  R:35.  Plaintiff's primary care provider described him as athletic and fit and the ALJ observed Plaintiff during the hearing and concluded that he was muscular.  *Id.*  The ALJ found that Plaintiff was not obese, but further found that to the extent that he was considered obese, the impairment, either alone or in combination with Plaintiff's other impairments, did not contribute significantly to his alleged symptoms or cause more than minimal and transient symptoms and limitations.  *Id.* at 35-36.

radicular lower back pain and found that the alleged impairment was not a severe medically determinable impairment.

The ALJ also addressed testimony by Plaintiff during the hearing that he suffered knee pain. The ALJ recognized that Plaintiff sustained an injury to his left knee and an April 2013 MRI showed a full-thickness tear of his ACL with lateral compartment bone marrow contusions and complex tears of his medial meniscus and lateral meniscus. *Id.* Plaintiff underwent two to three months of physical therapy, which were unhelpful, before consulting with an orthopedic surgeon. *Id.* The surgeon noted Plaintiff exhibited a small to moderate effusion, with decreased range of motion and evidence of laxity on provocative testing. *Id.* at 35. X-rays of the knee did not reveal any acute abnormalities, and showed only mild osteoarthritic changes. *Id.* Plaintiff underwent surgery to repair his knee on July 14, 2014. *Id.* On October 7, 2014, the surgeon determined that Plaintiff exhibited full range of motion throughout his left knee, with no obvious effusion or swelling. *Id.* The surgeon also noted that Plaintiff's knee was neurovascularly intact and stable. *Id.*

Nonetheless, the ALJ recognized that Plaintiff complained of knee pain to his chiropractor in July 2015, and between 2015 and 2016, he complained to his psychiatrist and primary care physician of left knee pain. *Id.* His primary care physician observed Plaintiff wearing a knee brace on his left knee, but consistently noted that he exhibited a normal gait and posture. *Id.* Additionally, the ALJ did not find evidence that Plaintiff returned to the surgeon or another specialist for his knee. *Id.* Based on this, the ALJ found that Plaintiff's testimony regarding his knee was unpersuasive, and his left knee impairment was non-severe. *Id.*

The ALJ also addressed Plaintiff's mental impairments of depression and anxiety in his Decision and concluded that, considered singly and in combination, they did not cause more than

minimal limitation in Plaintiff's ability to perform basic mental work activities and were non-severe. *Id.* In evaluating these impairments, the ALJ considered the four broad functional areas set out in the disability regulations for evaluating mental disorders known as the "paragraph B" criteria. *Id.*

Plaintiff was referred to an open behavioral health clinic in June 2014 to discuss treatment for depression after complaining to his primary care physician of impaired sleep, racing thoughts, feeling sad and depressed, trouble with motivating himself, social isolation, stress, and poor appetite. *Id.* at 37. Plaintiff was diagnosed with depression. *Id.* Plaintiff reported that his symptoms began 2-3 months prior and he did not previously experience depression. *Id.* He was referred to a psychiatrist for ongoing therapy. *Id.* However, his therapist noted that Plaintiff's mental status was largely benign, and he was cooperative, had an appropriate appearance, his memory was intact, he had an average intellect, unimpaired attention, fair reasoning, a logical thought process, and fair insight and judgment. *Id.* The ALJ noted that the psychiatrist made similar observations. *Id.* After a subsequent visit on September 25, 2014, Plaintiff was diagnosed with a mood disorder and generalized anxiety disorder, for which he was prescribed multiple psychotropic medications. *Id.* at 38.

The ALJ found that Plaintiff did not see a mental health professional again until February 11, 2015, and he reported during that visit that he had been without medications since November 2014. *Id.* The clinician who saw him noted a range of symptoms, including mood swings, depressed mood, lack of interest and motivation, fatigue, feelings of worthlessness, irritability, impaired sleep, difficulty concentrating, forgetfulness, and disturbed appetite. *Id.* She also noted that he appeared groggy and distractible, had slowed motor activity and speech, and a depressed mood and affect, but his mental status was otherwise benign, he was cooperative, his recent and

remote memory was intact, he dressed appropriately with good grooming and hygiene, made appropriate eye contact, and spoke coherently. *Id.* The ALJ noted that Plaintiff reported that he was there only because his attorney instructed him to seek mental health treatment. *Id.* After being prescribed medications and a second visit, Plaintiff stopped attending follow-up visits and stopped seeking mental health treatment for over three months. *Id.* at 38-39. Plaintiff began seeing a different psychiatrist on August 24, 2015, who he has continued to see, and who prescribed multiple medications to Plaintiff. *Id.* at 39.

The ALJ found that although Plaintiff testified that he began to experience mental health symptoms when he stopped working in 2013, the records indicate that he did not begin experiencing such symptoms until approximately May 2014. *Id.* The ALJ also concluded that the records demonstrated that Plaintiff's symptoms were not as severe, persistent, or limiting as Plaintiff alleged, and that this conclusion was also supported by evidence of Plaintiff's daily activities. *Id.* at 39-40. Plaintiff's activities included regularly attending church, maintaining friendships, having regular contact with extended family, and participation in social gatherings. *Id.* at 40. Additionally, despite Plaintiff's assertion that he does not care for his minor children, the ALJ determined that because he lives with the children and his wife works, it is more likely that Plaintiff does care for the children, which is a mentally demanding task. *Id.*

The ALJ next addressed the four functional areas, the first of which is activities of daily living. *Id.* The ALJ found that Plaintiff has a mild limitation in this area, relying again on Plaintiff's reported daily activities to determine that Plaintiff's allegations that his mental health restricted his daily living activities were not persuasive. *Id.* Accordingly, the ALJ found that Plaintiff's mental impairments caused no more than a mild restriction of activities of daily living. *Id.*

The second functional area is social function, for which the ALJ found that Plaintiff has a mild limitation. *Id.* Although Plaintiff alleged that he had difficulty getting along with others and could not stand being around others, the ALJ noted that the medical records suggested that Plaintiff's symptoms are not severe and his treatment providers repeatedly observed him to be cooperative. *Id.* at 40-41. Additionally, the ALJ relied on evidence that Plaintiff attends church regularly, maintains friendships and family relationships, participated in social gatherings, and shopped. *Id.* at 41.

The third functional area is concentration, persistence, or pace, for which the ALJ found Plaintiff has a mild limitation. *Id.* The ALJ stated that Plaintiff's psychiatrist noted Plaintiff to exhibit unimpaired memory or concentration just as often as impaired memory or concentration. *Id.* The ALJ also determined that Plaintiff's reported activity of watching television pointed to the ability to sustain attention. *Id.* Additionally, the ALJ explained that caring for two minor children required sustained vigilance. *Id.*

The final functional area is episodes of decompensation. The ALJ found that the record did not demonstrate that Plaintiff experienced any temporary exacerbations of his symptoms that resulted in a substantial loss of adaptive functioning and persisted for two weeks or longer. *Id.*

Because Plaintiff's medically determinable mental impairments caused no more than mild limitation in the first three functional areas, and he had no episodes of decompensation, the ALJ concluded that the impairments are non-severe. *Id.* In making his assessment, the ALJ gave little weight to the assessment prepared by Plaintiff's psychiatrist, Dr. Amado Suarez, in July 2016, in which Suarez opined that Plaintiff's impairments caused marked limitations of his ability to understand, remember, and carry out complex instructions, extreme limitation of his ability to make judgments on simple work-related judgments, marked limitations of his ability to interact

appropriately with supervisors and respond appropriately to usual work situations and changes in a routine work setting, and moderate limitations of his ability to interact appropriately with the public and coworkers, and additionally opined that Plaintiff would miss three or more work days per month due to his mental impairments. *Id.* The ALJ concluded that this report was inconsistent with Suarez's own findings and the record as a whole. *Id.* at 42. The ALJ explained that others who treated Plaintiff repeatedly observed him to be cooperative, exhibit unimpaired memory and attention, and have fair to good reasoning. *Id.* Additionally, the ALJ relied on the breaks in Plaintiff's treatment history, which he resumed only because instructed to do so by an attorney, and the absence of any efforts by Plaintiff to seek psychotherapy or other mental health treatment beyond the medication management provided by Suarez. *Id.* Moreover, the ALJ noted that Plaintiff decreased the frequency with which he saw Suarez from monthly to every two months. *Id.*

The ALJ gave partial weight to the assessments provided by state agency psychological consultants Peter Robbins and Sharon Ames-Dennard, who opined that Plaintiff's impairments caused only mild restriction of activities of daily living and mild difficulties maintaining social functioning. *Id.* These consultants also opined that Plaintiff's impairments caused moderate limitation on concentration, persistence, or pace that would significantly interfere with Plaintiff's ability to perform certain basic mental work activities. *Id.* Although neither examined Plaintiff, they specialize in evaluating mental impairments and are experienced in reviewing claimants' medical records and assessing the impairments documented therein. *Id.* The ALJ concluded that their assessments were supported by, and seemed consistent with, the evidence. *Id.*

The ALJ then conducted a residual functional capacity ("RFC") assessment and concluded that Plaintiff does not have an impairment or combination of impairments that met or medically

equaled the severity of one of the listed impairments.  *Id.* at 43.  The ALJ further concluded that Plaintiff had the RFC to perform the full range of work as defined in 20 CFR 404.1567(c) and 416.967(c).  *Id.*

In reaching this determination, the ALJ considered Plaintiff's testimony that he experiences constant neck and back pain that radiates to his legs, the center of his back, and to his left arm.  *Id.* at 44.  The pain is exacerbated by bending and prolonged sitting or standing, making it difficult to sit for more than 20 minutes at a time and causing pain while walking, and Plaintiff testified that he has difficulty turning his head, lifting objects with his hands, and performing activities at home, particularly those that require strength.  *Id.*  Plaintiff also indicated that he could not lift more than twenty pounds comfortably.  *Id.*

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that Plaintiff's statements regarding the intensity, persistence, and limiting effects of the symptoms were not consistent with the evidence in the record.  *Id.*  The ALJ relied on the absence of any underlying medically determinable back impairment that could reasonably be expected to cause Plaintiff's alleged low back pain and radicular lower extremity symptoms, and the fact that Plaintiff worked for years after a spine injury.  *Id.*  The ALJ indicated that Plaintiff stopped work because of his knee injury, but his knee improved significantly following the surgical procedure in 2014.  *Id.*  Prior to the knee injury, Plaintiff reported that a prescription he received provided some relief for his back pain.  *Id.* at 45.

Additionally, the ALJ relied on Plaintiff's visits to his primary care provider in 2014, in which the provider observed Plaintiff exhibit normal balance, a normal gait and stance, no decrease in neck suppleness, and no sensory abnormalities.  *Id.*  The ALJ further noted that other doctors made similar observations in 2014.  *Id.*  Although Plaintiff sought treatment from a chiropractor

between June and July 2015, the ALJ relied on notes stating that Plaintiff reported receiving relief from the treatments. *Id.* The ALJ also relied on the fact that Plaintiff did not seek treatment for his back pain until complaining of it against in April 2016 to his new primary care physician. *Id.*

Plaintiff's primary care physician ordered an MRI of Plaintiff's cervical spine, which revealed multilevel degenerative changes. *Id.* at 45-46. The ALJ noted, however, that Plaintiff's records do not include consultations with an orthopedist or other supplemental treatment for his spine impairment. *Id.*at 46. The fairly minimal efforts to seek treatment, in addition to gaps in treatment, relief obtained from treatment, and observations of doctors, caused the ALJ to conclude that Plaintiff's symptoms were not as severe, persistent, or limiting as he alleged. *Id.* Based on the record, the ALJ determined that despite his impairments, Plaintiff was able to perform the full range of work at medium exertional level. *Id.* at 47.

In making the RFC assessment, the ALJ gave little weight to Cruz's assessment, stating that Cruz relied on an evaluation of the limitations caused by Plaintiff's cervical spine impairment in making the assessment, but the ALJ determined that the impairment did not bear any logical relationship to many of the limitations suggested by Cruz, including that Plaintiff could tolerate only frequent exposure to pulmonary irritants. *Id.* at 48. The ALJ also concluded that Cruz's treatment notes provided relatively little support for his assessment. *Id.*

The ALJ also gave little weight to assessments provided by state agency medical consultants S. Ram Upadhyay, M.D., and Thomas Renny, D.O., who opined that Plaintiff was limited to performing work at the light level with only occasional postural activities. *Id.* The ALJ noted that neither consultant examined Plaintiff, and both appeared to consider Plaintiff's left knee impairment. *Id.* at 49. The ALJ determined that the consultants' conclusions that the left knee impairment caused significant limitations was inconsistent with the record. *Id.*

The ALJ next determined whether Plaintiff was capable of performing past relevant work as a Welder, Combination, and concluded that he was because the work did not require performance of work-related activities precluded by his RFC. *Id.* at 49. The ALJ relied on the VE's testimony, which he determined to be consistent with information contained in the Dictionary of Occupational Titles. *Id.*

Based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found that Plaintiff was not disabled. *Id.*

## II. LEGAL STANDARDS

### A. Review of a Report and Recommendation

Federal Rule of Civil Procedure 72(b)(2), in pertinent part, provides that "a party may serve and file specific written objections to the proposed findings and recommendations" of a magistrate judge. The district judge "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *Jeffrey S. v. State Bd. of Educ. of State of Ga.*, 896 F.2d 507, 512 (11th Cir. 1990). The district judge may accept, reject, or modify, in whole or in part, the Report and Recommendation. Fed. R. Civ. P. 72(b)(3). The district judge may also receive further evidence or recommit the matter to the magistrate judge with further instructions. *Id.*

### B. Review of the Commissioner's Decision

The Court reviews the Commissioner's decision to determine if it is supported by substantial evidence and is based upon proper legal standards. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). Where the Commissioner's decision is supported by

substantial evidence, the Court must affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.  42 U.S.C. § 405(g); *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) ("If the Commissioner's decision is supported by substantial evidence, we must affirm, even if the proof preponderates against it.").  The reviewing court "may not decide the facts anew, reweigh the evidence, or substitute [its own] judgment for that of the [Commissioner]."  *Id.*

### C.    An ALJ's Five-Step Disability Analysis

The Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled.  *See* 20 C.F.R. § 416.920(a)(4).  The Eleventh Circuit has explained this process as follows:

> In order to receive disability benefits, the claimant must prove at step one that he is not undertaking substantial gainful activity.  At step two, the claimant must prove that he is suffering from a severe impairment or combination of impairments.  At step three, if the claimant proves that his impairment meets one of the listed impairments found in Appendix 1, he will be considered disabled without consideration of age, education, and work experience.  If the claimant cannot prove the existence of a listed impairment, he must prove at step four that his impairment prevents him from performing his past relevant work.  At the fifth step, the regulations direct the Commissioner to consider the claimant's residual functional capacity, age, education, and past work experience to determine whether the claimant can perform other work besides his past relevant work.

*Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).  The plaintiff has the burden of proof on the first four steps; the Commissioner carries the burden on the fifth step.  *Wright v. Comm'r of Soc. Sec.*, 327 F. App'x. 135, 136-37 (11th Cir. 2009).  If it is determined at any step in the analysis that the claimant is disabled or not disabled, the evaluation does not proceed.  See 20 C.F.R. § 416.920(a)(4).

## III.    DISCUSSION

Plaintiff's objections largely relate to the ALJ's RFC determination at step four. Step four of the sequential evaluation process requires the ALJ to determine a claimant's RFC and ability to return to past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv) & 416.920(a)(4)(iv). RFC is defined in the regulations "as that which an individual is still able to do despite the limitations caused by his or her impairments." *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004). When determining whether a claimant can return to his or her past relevant work, the ALJ must consider "all the relevant medical and other evidence." *Id.*

When considering how much weight to give a medical opinion, the ALJ must consider a number of factors, including:

> (1) whether the doctor has examined the claimant; (2) the length, nature and extent of a treating doctor's relationship with the claimant; (3) the medical evidence and explanation supporting the doctor's opinion; (4) how consistent the doctor's "opinion is with the record as a whole"; and (5) the doctor's specialization.

*Forsyth v. Comm'r of Soc. Sec.*, 503 F. App'x 892, 893 (11th Cir.2013) (citing 20 C.F.R. §§ 404.1527(c), 416.927(c)). In particular, the Commissioner's regulations require that the opinions of examining physicians be given more weight than non-examining physicians, the opinions of treating physicians be given more weight than non-treating physicians, and the opinions of specialists (on issues within their areas of expertise) be given more weight than non-specialists. *See* 20 C.F.R. §§ 404.1527(c)(1)-(2), (5) & 416.927(c)(1)-(2), (5). Additionally, a treating physician's opinion must be given substantial weight unless the commissioner shows good cause for failing to do so. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004); *Hillsman v. Bowen*, 804 F.2d 1179, 1181 (11th Cir.1986). Good cause exists where the opinion is

unsupported by objective medical evidence, is merely conclusory, or is inconsistent with the physician's medical records. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).

An ALJ may not substitute his or her own opinion for the diagnosis of a medical professional. *Hillsman*, 804 F.2d at 1182. Nonetheless, medical opinions are distinct from an RFC Assessment. 20 C.F.R. §§ 404.1527, 404.1545, 416.913(a), 416.927, 416.945. The RFC determination is reserved for the ALJ's determination, and a physician's opinion is considered, but not dispositive. *Id.* §§ 404.1527(d)(1), 416.927(d)(1).

### A. Limitations Related to Plaintiff's Mental Health Impairments

Plaintiff argues in his Objection that the ALJ's RFC finding is unsupported by substantial evidence because (1) the ALJ substituted his judgment for that of Robbins, Ames-Dennard, and Suarez; and (2) the ALJ failed to find Plaintiff's mental limitations as severe, or include the relevant limitations in the RFC, which error was not harmless. Doc. 21 at 1-4.

The Court agrees with the Magistrate Judge's determination that substantial evidence supports the ALJ's RFC finding and the ALJ did not substitute his own opinions for those of Plaintiff's treating physicians and the State agency consulting physicians. Doc. 20 at 14-15. In the Objection, Plaintiff takes issue only with respect to the findings as they relate to his mental health impairments, and the Court's discussion is limited to this topic. Doc. 21 at 1-2.

Evidence in the record supports the ALJ's decision for giving little weight to Suarez's opinion. The ALJ found that Suarez's opinion was inconsistent with his own findings and the record as a whole. R: 42, 574-75. Although Suarez noted that Plaintiff sometimes exhibited impaired memory or concentration, on other occasions he noted that Plaintiff did not have impaired memory or concentration, but appeared cooperative. Other treatment providers also found Plaintiff to be cooperative and to exhibit unimpaired memory and attention with fair to good reasoning.

These findings are supported by the record. *Id.* 688-97; 458, 465, 482, 486, 518, 521, 557, 562, 584, 608, 619, 629, 633, 644, 723, 751. The record also supports the ALJ's other reasons for giving Suarez's opinion little weight, such as the fact that he returned to therapy because his attorney instructed him to do so, and his participation in social situations. *Id.* at 724, 575. Accordingly, the ALJ did not substitute his opinion for that of Suarez.

The same applies to Robbins and Ames-Dennard, whose opinions the ALJ gave partial weight. *Id.* at 42. The ALJ determined that their conclusions that Plaintiff's impairments cause moderate limitation in concentration, persistence, or pace that would significantly interfere with his ability to perform certain basic mental work activities were inconsistent with the record as a whole. *Id.* at 42. The ALJ's conclusion was based off of similar reasoning to that for giving Suarez's opinion little weight, and, as previously stated, such reasoning is supported by record evidence.

The record contains substantial evidence that the ALJ considered the mental health evidence in determining Plaintiff's RFC. R:43. The ALJ specifically noted after determining that Plaintiff's mental health impairments are non-severe that this was "not a residual functional capacity assessment . . . ." *Id.* Accordingly, the ALJ stated that "the following residual functional capacity assessment reflects the degree of limitation [the ALJ] found in the 'paragraph B' mental function analysis." *Id.* The ALJ further stated in his Decision that he considered Plaintiff's impairments, both alone or in combination, and they did not reach the level of severity required for a disability. *Id.*

Based on the above, the ALJ's findings with respect to Plaintiff's mental health impairments are supported by substantial evidence and Plaintiff's objections are overruled.

**B.      The ALJ's RFC Determination**

In his Objection, Plaintiff states that the ALJ substituted his own medical judgment for that of the treating, examining, and non-examining medical sources to find that Plaintiff had the RFC to perform the full range of medium work.  Doc. 21 at 4.  Plaintiff specifically objects to the ALJ's treatment of Cruz's, Upadhyay, and Renny's opinions.  The Court agrees with the Magistrate Judge's conclusions that the ALJ did not improperly substitute his medical judgment for that of medical sources, and that the RFC determination is supported by substantial evidence.  Doc. 20 at 6-7, 9-11.

**1.      Cruz**

In making his RFC determination, the ALJ gave little weight to the assessment prepared by Cruz because his treatment notes provided little support for his assessment and certain limitations did not bear a logical relationship to the purported cause.  R:48.  For example, Cruz determined that Plaintiff exhibited decreased range of motion through his spine, but also noted that Plaintiff exhibited a normal posture and gait, with normal range of motion throughout his upper and lower extremities.  *Id.* at 735-51.  The ALJ's reliance on Plaintiff's previous ability to work despite his spine injury occurring years before the alleged disability onset date is also supported by the record.  *Id.* at 297, 414, 451.  These articulated reasons are substantial evidence for giving little weight to Cruz's assessment that prevent this Court from disturbing the ALJ's findings. *Wilcox v. Comm'r, Soc. Sec. Admin*, 442 F. App'x 438, 440 (11th Cir. 2011).

**2.      State Medical Consultants**

The ALJ's decision to give little weight to state agency medical consultants Upadhyay and Renny's opinions is also supported by substantial evidence.  The consultants both imposed restrictions based on Plaintiff's knee injury.  R:92, 108, 126.  The ALJ's finding that this is not

supported by the record because Plaintiff regained full range of motion after surgery is supported by substantial evidence. *Id.* at 506. With respect to Plaintiff's back injury, also relied on by the consultants, Plaintiff worked as a welder following this injury. *Id.* at 44, 47, 414, 451.

### 3. RFC Determination That Plaintiff Had an RFC to Perform the Full Range of Medium Work

The Court agrees with the Magistrate Judge's determination that substantial evidence supports the ALJ's RFC finding. As explained above, the ALJ's determination to give little weight to Cruz's and the consultants' opinions is supported by substantial evidence. As detailed by the Magistrate Judge, the record also contains evidence that Plaintiff regained full range of motion in his knee and was neurovascularly intact distally to slight touch after his knee surgery; Plaintiff had generally unremarkable physical examinations that included a normal gait, range of motion, and strength; large gaps existed in Plaintiff's mental health treatment and his mental status examinations were largely unremarkable; and Plaintiff worked after injuring his spine and made only minimal efforts to seek treatment for this impairment. R:403-11, 446-49, 451-55, 458, 465, 482, 486, 502, 506, 518-21, 564-65, 568-72, 668-69, 672-73, 688-700, 721, 726-27, 736-40, 748-51.

The ALJ applied to correct law and properly considered all relevant evidence. The ALJ's findings are supported by substantial evidence. Accordingly, Plaintiff's objections are overruled.

### C. Weight Given Regarding Ability to Perform A Range of Light Work

Plaintiff includes a second objection regarding the little weight given to Cruz's opinion, the assessments of consultants Upadhyay and Renny, the assessment's of the state psychological consultants Robbins and Ames-Dennard, and the opinion of Suarez. Doc. 21 at 7-8. Plaintiff contends that by rejecting the opinions of every medical source who expressed an opinion, the ALJ issued a decision unsupported by substantial evidence.

For the reasons stated above, the ALJ's decisions to give little or partial weight to the medical professions' opinions and assessments are supported by substantial evidence. The record contains evidence that their assessments and opinions were overly restricted and not supported by the medical evidence. Accordingly, Plaintiff's objections are overruled.

## IV. CONCLUSION

After careful consideration of the Report and Recommendation of the Magistrate Judge, in conjunction with an independent examination of the file, the Court is of the opinion that the Magistrate Judge's Report and Recommendation should be adopted, confirmed, and approved in all respects.

Accordingly, it is **ORDERED AND ADJUDGED**:

1.      Plaintiff's Objections to the United States Magistrate Judge's Report and Recommendation (Doc. 21) are **Overruled**.

2.      The Report and Recommendation of the Magistrate Judge (Doc. 20) is **adopted, confirmed, and approved** in all respects and is made a part of this Order for all purposes, including appellate review.

3.      The decision of the Commissioner of Social Security is **AFFIRMED**.

4.      The Clerk is directed to terminate all pending motions and deadlines, enter judgment accordingly, and **CLOSE** this case.

**DONE AND ORDERED** in Tampa, Florida on March 14, 2019.

Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record and Unrepresented Parties, if any